# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>MARY A. DAVIS,<br><br>      **Debtor**<br>_____<br><br>MICHELLE M. LABREE,<br><br>      **Plaintiff**<br><br>v.<br><br>MARY A. DAVIS,<br><br>      **Defendant** | Chapter 7<br>Case No. 06-12102-RS<br><br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 06-1366 |

## AMENDED MEMORANDUM OF DECISION[1]

The Debtor obtained a windfall of sorts when she sold her condo in March 2005 to Michelle LaBree, as a consequence of a flawed title report for which she bore no responsibility. At issue is whether Ms. LaBree (or, more accurately, her subrogee title insurer) can except from the Debtor's discharge the claim resulting from that windfall.

### Procedural Status

The Debtor filed her Chapter 7 case on June 30, 2006. The Chapter 7 Trustee reported her case as without distributable assets on September 8, 2006. On September 22, 2006, Ms. LaBree filed a complaint against the Debtor seeking an exception to discharge under Section 523(a)(2)(A) and Section 523(a)(4) on account of the windfall, thereby commencing this

___

[1] The amendments are only to correct typographical errors.

adversary proceeding.[2] I conducted a trial of the complaint on September 19, 2007, took the matter under advisement, and now render my decision.

## Facts

The Debtor bought her Dighton condo in 1995 under a state program designed to assist low and moderate income families to own homes purchased at a market discount ("Program").[3] Under the Program, the participating municipality providing the housing subsidy (here, Dighton) retains various rights including to a portion of net resale proceeds, first refusal, assent to resale and assent to refinancing. These retained rights are typically, and were here, set forth in a so-called Local Initiative Program Deed Rider appended to, and made part of, the Debtor's deed and recorded with that deed in the requisite registry ("Deed Rider").[4]

When the Debtor sold her condo to Ms. LaBree in 2005, the only lawyer involved in the transaction represented Ms. LaBree's financing lender ("Closing Counsel"). Closing Counsel orchestrated all aspects of the transaction, conducting (or commissioning) a title report, drafting the title transfer document, preparing the closing settlement statement, and conducting the actual closing. At that closing, he reported, erroneously, that title to the condo was "clean" - that is, unencumbered by any lien or restriction other than the lien of the first mortgagee. He thus missed the Deed Rider. The Debtor attended the closing. She heard the erroneous title report, reviewed the correspondingly erroneous settlement statement, and made no comment or disclosure regarding the unmentioned Deed Rider.

The transaction closed, the Debtor received the net sale proceeds (actually delivered to

---

[2]The complaint was amended on July 13, 2007 and answered on July 17, 2007.

[3]See M.G.L.A. c.40B secs. 20-23 (The Low and Moderate Income Housing Act).

[4]The parties concur that the Deed Rider constitutes a lien or encumbrance on the Debtor's condo to secure Dighton's Deed Rider rights.

her broker), Dighton got nothing and Ms. LaBree got a condo subject to the Deed Rider. The parties agree that the Debtor received $115,518.57 at the closing, that is, $70,751.49 more than she was entitled to receive, which sum should have been paid to Dighton under the Deed Rider. In September 2005, Ms. LaBree obtained a judgment for breach of contract against the Debtor in connection with this unfortunately flawed transaction. Thereafter, in late 2006, Ms. LaBree's title insurer paid Dighton its share of the net resale proceeds (i.e., $70,751.49) and Dighton discharged the Deed Rider lien. In effect, in this adversary proceeding, the title insurer now asks that the windfall claim arising from the transaction and the judgment thereon be excepted from the Debtor's discharge.

## **Analysis**

The question before the Court is whether the windfall obtained in the above circumstances should be excepted from the Debtor's discharge. Ms. LaBree (really, the title insurer) says yes, stating two causes of action against her, one under Section 523(a)(2)(A) for fraud and one under Section 523(a)(4) for embezzlement. The Debtor says no, contending, among other things, that she did not knowingly or intentionally make a false representation to Ms. LaBree (or anyone) regarding the Deed Rider - either by something she said or something she should have said but failed to say - on which Ms. LaBree justifiably relied to her detriment.

For fraud, Ms. Labree must demonstrate by a preponderance of the evidence that (i) the Debtor made a false representation (through something said, done or omitted); (ii) which she knew at the time was false; (iii) and which she made with the intent and purpose of deceiving Ms. LaBree; (iv) on which Ms. LaBree justifiably relied; and (v) as a result of which reliance, Ms. LaBree sustained a loss or damage as a consequence of the representation. 4 Collier on Bankruptcy ¶523.08(1)(e) (15th ed. rev.).

3

For embezzlement, Ms. LaBree must demonstrate by a preponderance of the evidence that (i) the Debtor appropriated lawfully obtained funds for her own benefit by fraudulent intent or deceit; (ii) deposited those funds in an account accessible only to her; and (ii) disbursed or used those funds improperly and unreasonably.  4 Collier on Bankruptcy ¶523.10(2) (15th ed. rev.).

In both causes of action, fraud and embezzlement, intent to deceive is the key element: elusive and inferential but necessary.

There is no allegation, and no evidence to support one, that the Debtor acted in advance of the closing to obtain more than her proper allocation of sale proceeds.  She had no role in either the title examination or in the preparation of the settlement statement.  Indeed, there is no evidence that she saw either the report or the statement prior to the closing.  There is no allegation, and no evidence to support one, that the Debtor made any representation regarding her condo, the state of her title, or the rights of Dighton or that she was asked to do so.  Indeed, Closing Counsel testified that he placed no reliance whatsoever on the Debtor in his title examination or settlement statement preparation.

The facts advanced against the Debtor, then, do not concern her pre-closing conduct, statements or omissions.  Rather, the title insurer ties the windfall to the Debtor's silence at the closing and contends that the requisite intent is thereby established.  This contention does not withstand scrutiny.

*First*, the Debtor did not have the benefit of counsel at the closing and, while she is fairly charged with knowledge of the Deed Rider, cannot be fairly charged with responsibility for its implementation in a transaction managed by other parties.  *Second*, Closing Counsel did not seek and did not rely on any representations by the Debtor regarding the state of title, and neither did

Ms. LaBree.  *Third*, the Debtor had twice previously refinanced her first mortgage without any involvement or consent by Dighton, and hence had precedent to expect no involvement or consent by Dighton here as well.  *Fourth*, Closing Counsel, as is customary in such residential closings, was in charge of the transaction - he did the title report, he prepared the settlement statement, he arranged for the issuance of payoff checks - and the Debtor's acquiescence in his management of the transaction is reasonable in these circumstances.

I find the Debtor's silence at the closing reasonably attributable to her deferral to Closing Counsel, who reported the state of title, drafted the title document, prepared the settlement statement and arranged for the issuance of the Debtor's closing check.  I find the Debtor's testimony regarding this deferral to be credible.  I find no intent to defraud and no fraudulent representation knowingly or intentionally made by the Debtor by virtue of her silence at the closing or her acceptance of the net sale proceeds as calculated by Closing Counsel.

### Conclusion

In the absence of the requisite intent, demonstrated by a preponderance of the evidence, both causes of action fail.

Judgment for the Debtor will separately issue.

Dated: September 27, 2007                    /s/ Robert Somma
                                             Robert Somma
                                             United States Bankruptcy Judge

cc:     Richard N. Gottlieb, Counsel to Debtor
        John B. Harkavy, Counsel to Michelle M. LaBree